UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CR. NO. 1:23-MJ-06333 |
| ) | |
| SUDIPTA MOHANTY ) | |

<u>DEFENDANT'S MOTION FOR ORDER TO PRODUCE HAWAIIAN AIRLINE RECORDS
PURSUANT TO FED. R. CRIM. P. RULE 17</u>

1The Defendant in this case, Sudipta Mohanty, respectfully requests that this Court, pursuant to Fed. R. Crim. P. 17, to order the Legal Program Manager/Keeper of Records for Hawaiian Airlines, Rose Harman, to produce the following:

1. The names and identifying information of all flight attendants working and/or present on Hawaiian Airlines Flight 90 en route from Honolulu Hawaii to Boston, Massachusetts on May 27, 2022 ("Flight 90");

2. Any and all flight attendant logs from Flight 90. This includes, but is not limited to, logs of planned and/or executed services including food/drink, hygiene, headphones, goods for purchase, alcohol sales, and other such services; and any other records detailing flight attendant actions, duties, and passenger interaction of flight attendants during Flight 90;

3. Any and all briefings, reports, emails, documentation, or logs by Hawaiian Airlines documenting any events or observations on the above-referenced flight as well as any similar type of documentation pertaining to Hawaiian Airlines outreach to flight staff and staff responses in response to events allegedly occurring on Hawaiian Airlines Flight 90 in May 27, 2022;

4. Any surveillance or video footage of the aircraft cabin from above-referenced Hawaiian Airlines Flight 90, including boarding and deboarding footage.

Fed. R. Crim. P. 17(C)(1)(a subpoena may order the witness to produce any books, papers, documents, or other objects the subpoena designates).

In support, the Defendant states that in this case, Dr. Sudipta Mohanty has been accused of touching himself while onboard the Hawaiian Airlines Flight 90 on May 27, 2022, in front of his seatmate, a 14-year-old complainant. By way of background, the complainant, EB, was seated next to Dr. Mohanty on a flight from Honolulu to Boston. During that flight, she switched seats. When her grandparents, who were seated in another row, asked EB why she moved, she told her grandparents that the man next to her had been touching himself under a blanket. A few days later, EB told her brother that her seatmate had actually exposed his penis. A few days after that, EB spoke to her cousin and now claimed that not only was her seatmate's penis fully exposed, but he also somehow managed to ejaculate (sitting right in economy on a crowded Hawaiian Airlines flight with his own fiancé sitting directly next to him). The latest addition to EB's narrative was overheard by EB's grandmother, which led to the allegations for which Dr. Mohanty faces a federal trial, as charged under 49 USC §45606(2)/DCC §§ 22-1312 (Application of certain criminal laws to acts on aircraft/Lewd, indecent or obscene acts) at the end of this month. Dr. Mohanty has firmly and repeatedly denied the allegations from the outset.

While FBI agents conducted some investigation by way of interviewing civilian passengers on the subject aircraft that were seated near Dr. Mohanty, it does not appear that agents reached out to the Hawaiian Airlines personnel actually staffed during the flight. This lapse is particularly significant in light of the fact that, for the most part, the FBI's interviews of civilian witnesses seated around Dr. Mohanty consist of a brief notation that the passenger slept

for some portion of the flight and saw nothing unusual. In contrast to these passengers, then, the flight attendants (to whom the FBI did not apparently extend their investigation) would have been the people tasked to remain awake, alert, and moving throughout the cabin during the flight- including past Dr. Mohanty's seat assignment, and likely repeatedly. As a result, the identifying information of the flight personnel and any records, logs or documentation pertaining to observations of Hawaiian Airlines staff and times and frequency of food/drink and other services on the flight are crucial. Similarly, any video footage of the cabin, including footage of boarding and deboarding, provides a contemporaneous visual account of the place of the alleged offense and the passengers identified as witnesses in this case. The requested information is evidentiary and relevant, not otherwise procurable reasonably in advance of trial by exercise of due diligence, and the request is specific and limited to evidence pertaining to the subject flight. *United States v. LaRouche Campaign*, 841 F. 2d 1176 (1st Cir. 1988). As a result, the Defendant respectfully requests that this Court allow this application for a Rule 17(c) subpoena to issue to the Keeper of the Records identified above.

Respectfully Submitted,
Counsel for the defendant,

*/s/ Claudia Lagos*
Claudia Lagos
Scully & Lagos
10 Post Office Square
Boston, MA  02109
(617) 307-5055

Dated: January 12, 2024

## Certificate of Service

I hereby certify that a copy of this Motion was served via ECF to all registered participants identified in the Notice of Electronic Filing (NEF) and paper copies will be served

upon any party or counsel of record who is not a registered participant of the Court's ECF System. /s/ *Claudia Lagos*, January 12, 2024.

                                                */s/ Claudia Lagos*
                                                Claudia Lagos